UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JORGE CAZARES RODRIGUEZ, an individual, on behalf of himself and on behalf of all persons similarly situated ,

Plaintiff,

v.

HV GLOBAL GROUP, INC., a corporation; and DOES 1 through 50, inclusive,

Defendant.

Case No.: 26cv3395-GPC(JLB)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

**[Dkt. No. 12.]**

Before the Court is Plaintiff's motion to remand the case to state court. (Dkt. No. 12.) Defendant filed an opposition and Plaintiff replied. (Dkt. Nos. 21, 23.) Based on the reasoning below, the Court DENIES Plaintiff's motion to remand.

**Background**

On June 4, 2026, the case was removed from state court under the Class Action Fairness Act. (Dkt. No. 1, Not. of Removal.) On July 1, 2026, Jorge Cazares Rodrigues ("Plaintiff") filed a first amended complaint ("FAC") alleging a putative wage and hour class action on behalf of himself and on behalf of all persons similarly situated. (Dkt. No. 11, FAC.) According to the FAC, Plaintiff was employed by Defendant in California

from July 2019 to June 2025 and was classified as a non-exempt employee and paid on an hourly basis. (*Id.* ¶ 3.) Defendant HV Global Group, Inc. provides real estate services in California. (*Id.* ¶ 2.)

The FAC alleges nine causes of action against Defendant for (1) unlawful business practices pursuant to California Business & Professions Code section 17200; (2) failure to pay minimum wages in violation of California Labor Code sections 1194, 1197 and 1197.1; (3) failure to pay overtime compensation in violation of California Labor Code section 510; (4) failure to provide required meal periods in violation of California Labor Code sections 226.7 & 512; (5) failure to provide required rest periods in violation of California Labor Code sections 226.7 & 512; (6) failure to provide accurate itemized statements in violation of California Labor Code section 226; (7) failure to reimburse employees for required expenses in violation of California Labor Code section 2802; (8) failure to pay wages when due in violation of California Labor Code sections 201, 202, and 203; and (9) failure to pay sick pay wages in violation of California Labor Code sections 201-203, 233, 246. (Dkt. No. 1, FAC ¶¶ 44-115.) The FAC alleges that the amount in controversy is under $5,000,000. (*Id*. 4.)

## Discussion

### A. Legal Standard

Under the Class Action Fairness Act ("CAFA"), the court has original jurisdiction over class actions where 1) any member of the plaintiff class is diverse from any defendant; 2) the proposed class contains 100 or more putative class members; 3) and the amount in controversy exceeds the "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d); *Rodriguez v. AT & T Mobility Servs., LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014). Courts should interpret CAFA "expansively." *Ibarra v. Manheim Inv*., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

In this case, the parties do not dispute that minimal diversity exists and the class has more than 100 members. Plaintiff moves to remand the case to state court on the third factor alleging that Defendant failed to demonstrate the amount in controversy ("AIC") exceeds $5,000,000.

A defendant's notice of removal need only present a "short and plain statement of the grounds for removal" with a plausible allegation that the AIC exceed $5,000,000. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing 28 U.S.C. § 1446(a) and *Dart*, 574 U.S. at 89). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by plaintiff or questioned by the court." *Dart*, 574 U.S. at 87.

However, when the plaintiff contests the defendant's AIC allegations, removal is proper when "'the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* A defendant does "not need to prove to a legal certainty that the amount in controversy requirement has been met." *Id.* at 88-89 (citation and quotation marks omitted). The defendant may also rely on "reasonable assumptions based on the plaintiff's complaint." *Perez v. Rose Hills Co*., 131 F.4th 804, 806 (9th Cir. 2025); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 925 (9th Cir. 2019) ("An assumption may be reasonable if it is founded on the allegations of the complaint."). Recently, the Ninth Circuit clarified that because "'[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability,' a removing defendant need not present evidence of what its ultimate liability will be—in many cases, the defendant presumably expects that figure to be zero." *Perez,* 131 F.4th at 808 (quoting *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010)). Therefore, the defendant "is permitted to rely on a chain of reasoning that includes assumptions to calculate the amount in controversy." *Id.* (citations and quotation marks omitted). The

court's job "is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Trans. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)). Thus, the defendant has the burden of establishing by a preponderance of the evidence that the amount-in-controversy could exceed five million dollars; if the defendant fails to do so, the federal court lacks subject matter jurisdiction, and the case must be remanded. *See* 28 U.S.C. § 1447(c).

The Court observes that Plaintiff incorrectly argues that the Ninth Circuit requires a notice of removal and any post-removal challenges to jurisdiction to include admissible evidence of the violation rate which is contrary to Ninth Circuit law. (Dkt. Nos. 12-1, 23.) While it "may make sense to expect a defendant to introduce evidence" of "the number of employees in the class", "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate" it considers is zero; therefore, "a defendant can readily ascertain the violation rate by looking at the plaintiff's complaint." *Perez*, 131 F.4th at 808. Only when a defendant's assumptions regarding violations rates are not reasonable or cannot be justified by the allegations in the complaint must the defendant support its violation rates with evidence. *Id.* at 809.

Here, Defendant introduces the declaration of Candace Shipp, (Dkt. No. 21-3, Shipp Decl.), with certain facts about the putative class members, including the number of current and former non-exempt employees, during the relevant class period but does not provide any facts regarding a violation rate, which is not fatal. Moreover, the Court looks to the FAC, not the complaint at removal, to determine if the Defendant's assumption regarding the AIC is reasonable.[1] *See Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 623 (9th Cir. 2025) (citing *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) (overruling prior precedent and holding that jurisdiction under CAFA is not

[1] While Plaintiff incorrectly relies on the complaint, Defendant appropriately relies on the allegations in the FAC to determine the Court's jurisdiction under CAFA. However, because the complaint and FAC are nearly identical, Plaintiff's reliance on the complaint does not impact the Court's analysis.

determined solely at the time of removal but directs the court to look at the "operative complaint, including any post-removal amendments, when determining jurisdiction.")).

**B. Failure to Provide Meal Periods (Fourth Cause of Action)**

The FAC alleges that Defendant, "from time to time", failed to provide legally required thirty (30) minute off-duty meal breaks prior to Plaintiff and the putative class members' fifth hour of work and "from time to time" failed to provide a second off-duty meal period on some workdays when they worked ten hours. (Dkt. No. 11, FAC ¶¶ 11, 87.) Plaintiff, himself, experienced meal break that were late, missed or interrupted "at least each week and multiple times per week during the end of the month reports." (*Id.* ¶ 8.) Plaintiff also claims that he was from "time to time" interrupted by work while he was clocked out for his off-duty meal break. (*Id.*)

Pursuant to California Labor Code § 226.7(c):

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Lab. Code § 226.7(c).

Defendant calculates the AIC, relying on the allegations in the FAC[2], and assumed two meal period violations, or a 40% violation per workweek. (Dkt. No. 21 at 15-16.) Because the average shift length was in excess of 7 hours, Defendant assessed an AIC of $1,075,000 (25,000 workweeks, times 2 assumed meal break violations per week, times $21.50 average pay rate). (Dkt. No. 21-3, Shipp Decl. ¶¶ 5(b), (e) and (f).)

Numerous district courts have held that allegations of "at times" or similar language leads to an assumption of at least one violation per week for wage and hour

---

[2] Defendant's reliance on "pattern and practice" in paragraph 18 and 30 of the FAC does not support the meal period claim because they concern the claims regarding inaccurate wage statements, waiting time penalties, unpaid wages, and overtime wages. (*See* Dkt. No. 21 at 15 (citing Dkt. No. 11, FAC ¶¶ 18, 30(a).)

claims such as unpaid overtime, unpaid minimum wages, and meal and rest period claims. *See Carroll v. Ameri-Force Craft Services, Inc.*, Case No.: 24-cv-1443-RSH-DTF, 2025 WL 2621704, at *5 (S.D. Cal. Sept. 11, 2025) (citing cases); *Peraino v. DNC Parks & Resorts at Tenaya, Inc*. Case No.: 25-cv-1130-JES-DEB, 2025 WL 3022750, at *4 (S.D. Cal. Oct. 29, 2025) (citing *Carroll v. Ameri-Force Craft Serv., Inc.*, No. 24-cv-1443-RSH-DTF, 2025 WL 2621704, at *5 (S.D. Cal. Sept. 11, 2025); *McGill v. Walgreens Co.*, No. EDCV 25-1422-KK-SPX, 2025 WL 2413970, at *3-4 (C.D. Cal. Aug. 20, 2025) (finding assumption of 20% violation reasonable based on "at times" language reasonable and citing cases); *Santos v. Pictsweet Co.*, No. 2:25-CV-03181-AB-SSC, 2025 WL 2424357, at *6 (C.D. Cal. Aug. 20, 2025) (citing cases approving of assumption of once a week); *Nguyen v. SMTC Mfg. Corp. of Cal.*, No. 24-CV-07394-JST, 2025 WL 2238033, at *5 (N.D. Cal. Aug. 6, 2025) ("Although other courts have approved either more or less generous assumptions, the 20% rate appears to represent the median."); *Sumo v. PSL Assocs., LLC*, No. 25-5436-BHS, 2025 WL 2624531, at *2 (W.D. Wash. Sept. 11, 2025) ("20% violation rate 'broadly consistent' with 'at times' language in a complaint")); *see also Munoz v. Subcontracting Concepts CT LLC*, Case No. 2:25-cv-07887-SVW-AS, 2026 WL 1805730, at *3 (C.D. Cal. June 22, 2026) (allegations of "sometimes, but not always" in conjunction with "policy and practice" was vague as to frequently of the alleged violation and court calculated a conservative violation rate of 20% ); *Perez v. Rose Hills Co.*, Case No. 2:24-cv-04827-JLS-PVC, 2025 WL 2631603, at *5 (C.D. Cal. Aug. 29, 2025) (on remand, the district court found the defendant's assumption of one meal period violation and one rest break violation per class member per week based on the fact that the violations occurred "at times" was reasonable); *Langwell v. Floor and Decor Outlets of America, Inc.*, Case No.: 25-cv-1326-BJC-DEB, 2026 WL 1747776, at *3 (S.D. Cal. June 17, 2026) (reasonable for defendant to assume that putative class members experienced one meal period violation and one rest-break violation per work week based on "systematic, company-wide policy and practice" and "sometimes, but not always" failed to provide meal or rest breaks).

Here, the FAC alleges that the meal break violations occurred "from time to time" but Plaintiff also claims that his meal breaks were interrupted, missed or late at least each week and multiple times during the end of the month. While "time to time" supports a 20% violation rate, due to the additional claim that Plaintiff was forced to forgo his meal breaks multiple times at the end of each month, Defendant's assumption of a 40% violation rate resulting in an AIC of $1,075,000 is reasonable.

**C. Failure to Provide Rest Period (Fifth Cause of Action)**

The FAC complains that Plaintiff and the putative class members were from "time to time" and "periodically" required to work in excess of four hours without being provided a ten minute rest period, required to work between six to eight hours without being provided a first and second rest period of at least ten (10) minutes and required to work over ten (10) hours without being provided a first, second and third rest period of at least ten (10) minutes. (Dkt. No. 11, FAC ¶ 91.) The FAC also claims that Plaintiff and the putative class members were "regularly" unable to take their rest breaks and Defendant did not have a "policy or practice" which provided timely off-duty rest breaks. (*Id.* ¶¶ 8, 22.) Specifically, Plaintiff claims he "rarely" was able to take rest breaks. (*Id.*)

Under the same statute for meal break violations, California prohibits employers from requiring employees to work during a required rest period, and the employer must pay to the employee an additional hour of pay at the employee's regular rate of pay for each day that the period is not provided. *See* Cal. Lab. Code § 226.7(b)-(c).

Defendant calculated the AIC assuming a 100% violation rate of 10 rest period violations per week which is based on two rest periods per day for an average shift length of over 7 hours. (Dkt. No. 21 at 16-17.) Based on these assumption, the AIC is assessed to be $5,375,000 (25,000 work weeks times 10 assumed rest period violations per week times $21.50 average pay rate). (*Id.*) Defendant relies on the allegation that Plaintiff "rarely" was able to take his rest breaks and Defendant did not have a policy or practice of providing rest breaks. However, Defendant neglects to consider that the FAC also alleges that the violations occurred from "time to time" and "periodically."

As explained above, courts have found that a 20% violation appropriate when Plaintiff alleges violations occurred from "time to time." Further, the FAC claims Plaintiff and putative class members were "regularly" unable to take their rest breaks does not equate to a 100% violation rate. *See Zamarripa v. Superior Talent Resources, Inc.*, Case No. SA CV 19-0982-DOC (MAAx), 2019 WL 3246502, at *4 (C.D. Cal. July 19, 2019) ("routine" does not necessarily imply a 100% violation rate). Therefore, Defendant's reliance solely on "rarely" to assume a 100% violation rate on the rest period claim is not reasonable in light of the other allegations that the rest period violations occurred from "time to time", "periodically" and "regularly."

While courts have found reasonable a 20% violation rate when a plaintiff alleges that the violations occur from "time to time", the Court also considers Plaintiff's claim that he "rarely" was able to take his rest breaks; therefore, the Court finds reasonable an assumption of a 40% violation or 2 violations per work week and the AIC amounts to $1,075,000 (25,000 workweeks times 2 assumed rest period violations per week times $21.50 average pay rate). *See e.g., Lopez v. Bellingham Marine Indus., Inc.*, No. 25-cv-00518-DAD-JDP, 2025 WL 2710458, at * 9 (E.D. Cal. Sept. 23, 2025) ("Courts have found that violation rates ranging from 10 to 40%—are reasonable when the complaint makes pattern and practice allegations.").

**D. Failure to Pay Minimum Wages (Second Cause of Action) and Overtime Compensation (Third Cause of Action)**

The FAC alleges that Defendant had a wage "policy and practice" and "company policies, practices and procedures" of not paying Plaintiff and putative class members the correct amount of time they worked and as such, underpaid the actual time worked by them. (Dkt. No. 11, FAC ¶¶ 30(a), 63, 64.) It also claims as "a pattern and practice, [Defendant] regularly failed to pay [Plaintiff and putative class members] their correct wages[.]" (*Id.* ¶ 18.) Plaintiff and putative class members further allege they forfeited minimum wage and overtime compensation by working without meal breaks which occurred from "time to time." (*Id.* ¶ 8.) The FAC also asserts that Defendant "as a

matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked . . . and always to the benefit of [Defendant.]" (*Id.* ¶ 8.)

The California Labor Code requires employers to pay employees who work more than eight hours in a day, or forty hours in a week, at a "rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). As to unpaid wages, "an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a).

Defendant assumes two hours of unpaid overtime and unpaid wages per week based on the allegations that Defendant had a "pattern and practice" and "company policies, practices, and procedures" caused Plaintiff to suffer meal period violations "multiple times per week" at the end of the month. (Dkt. No. 21 at 13-14.) It calculates the AIC for overtime pay to be $1,612,600 (25,000 workweeks times $21.50 average hourly wage times 1.5 base overtime rate times 2 assumed overtime hours per week). As to unpaid work, Defendant calculates the AIC to be $700,000 in liquidated damages (25,000 workweeks times 2 hours times $14 minimum wage). The total AIC for the unpaid work and overtime claims Defendant claims is $2,312,500. (Dkt. No. 21 at 14-15.)

Contrary to Defendant's argument, "pattern and practice" or "policy and practice" does not mean a violation occurred "always" or "on each and every shift" and does not support an assumption of a higher violation rate. *See Ibarra*, 775 F.3d at 1198-99 (complaint alleging "an institutionalized unwritten policy that mandates" the employment violations does not mean they occurred in each and every shift); *Melead v. TVI, Inc.*, No. SACV 20-01224-CJC(ADSx), 2020 WL 5407456, at *3 (C.D. Cal. Sept. 9, 2020) ("A uniform policy and practice of committing violations from time to time does not allege that a violation occurred with every employee."). District courts have found that a "pattern and practice" and from "time to time" support a reasonable assumption of a 20% violation or one hour per week for unpaid overtime or unpaid minimum wage pay. *See Garza v. WinCo Holding, Inc.,* Case No. 1:20-cv-01354-JLT-HBK, 2022 WL 902782, at

*5 (E.D. Cal. Mar. 28, 2022) (presumption of 20% violation rate or one-hour per week violation of missed overtime pay reasonable when plaintiff alleges a general pattern or practice) (citing *Kincaid v. Educ. Credit Mgmt. Corp*., No. 2:21-cv-00863-TLN-JDP, 2022 WL 597158, *4 (E.D. Cal. Feb. 28, 2022) and *Wicker v. ASC Profiles* LLC, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, *2-3 (E.D. Cal. Mar. 30, 2021) (finding one overtime violation per week reasonable as a 20% violation rate based on "Plaintiff's complaint alleging 'a pattern and practice' of 'Defendants fail[ing] to pay overtime wages to Plaintiff and other class member for all hours worked'")); *Vallejo v. Sterigenics U.S., LLC*, No. 3:20-cv-01788-AJB-AHG 2021 WL 2685348, *4 (S.D. Cal. June 29, 2021) (finding one hour per week unpaid overtime is a reasonable assumption where plaintiff brought a claim for "unpaid overtime based on unlawful rounding"); *Mendoza v. Savage Servs. Corp*., Case No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a 100% violation rate is not supported by a factual or evidentiary basis, courts in this district have found that a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable."); *Cabrera v. S. Valley Almond Co., LLC*, Case No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (one hour of unpaid overtime and one hour of unpaid minimum wage assumption reasonable based on allegation that violations occurred "at time" and "on occasion" due to "policies and/or practices" of the defendant). However, Plaintiff also claims that he did not take meal breaks at least each week and "multiple times per week" at the end of the month which increases the violation rate beyond one hour per week so that an assumption of two hours of unpaid overtime and unpaid wages per week is not unreasonable. Therefore, the Court finds that Defendant's assumption of two hours of unpaid overtime and unpaid wages is reasonable for an AIC of overtime pay of $1,612,600 and for unpaid wages of $700,000. The total AIC for the unpaid work and overtime claims is $2,312,500.

/ / /

/ / /

**E. Inaccurate Wage Statements (Sixth Cause of Action)**

The FAC complains that from "time to time", Defendant failed to provide Plaintiff and putative class members with complete and accurate wage statements that showed the correct gross and net wages earned. (Dkt. No. 11, FAC ¶¶ 14, 96.) Plaintiff explains that Defendant failed to compensate and calculate correct wages for all missed meals and rest breaks. (*Id.* ¶¶ 22, 97.) The FAC asserts that Defendant "as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked . . . and always to the benefit of [Defendant.]" (*Id.* ¶ 8.)

California Labor Code section 226(e) provides penalties for violations of the wage statement requirements set forth at Labor Code Section 226(a). The penalty scheme under this statutory provision requires: $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(e).

According to Defendant's data, putative class members worked in excess of 12,500 biweekly pay periods over the alleged class period. (Dkt. No. 21-3, Shipp Decl. ¶ 5(c).) In order to reach the $4,000 statutory cap, it would require each putative class member to receive 41 pay periods or 1.5 years of employment. (Dkt. No. 21 at 18.) The average length of employment for putative class members during the alleged class period exceeded 2.5 years. (Dkt. No. 21-3, Shipp Decl. ¶ 5(g).) Defendant then assumed that ½ of the putative class members would receive the $4,000 statutory cap for wage statement penalties putting the AIC at $700,000 (175 putative class members x $4,000 statutory penalty). Even though the other half of the putative class are entitled to relief based on wage statement penalties, Defendant declines to incorporate them into the AIC. (Dkt. No. 21 at 18.) Based on the data provided in the Shipp Declaration that the average length of employment was in excess of 2.5 years and there were about 350 current and former non-exempt employees, Defendant made a reasonable, conservative assumption by only calculating the 100% violation for half of the class members and disregarding the

other half of the class in its calculation. Further, because Plaintiff bases his inaccurate wage statement, in part, on his claims of missed meal and rest periods, even with only one alleged violations, then all his wage statements were inaccurate. *See Hill v. Hogan Pers., LLC*, No. EDCV 25-0564 JGB (SHKX), 2025 WL 1898255, at *7 (C.D. Cal. July 9, 2025) ("Plaintiff bases his inaccurate wage statement claim on his underlying claims of unpaid minimum and overtime wages, missed meal and rest periods, and unreimbursed business expenses, so if even one alleged violation occurred, then the wage statements would consequently be inaccurate."). Therefore, Defendant's assumptions regarding the inaccurate wage statement alleged in the FAC are reasonable.

**F. Failure to Pay Wages when Due/Waiting Time Penalties (Eighth Cause of Action**

The FAC alleges Defendant failed to timely pay Plaintiff and putative class members their wages due at the time of termination. (Dkt. No. 11, FAC ¶¶ 105-09.) It further alleges that as a "pattern and practice, [Defendant] regularly failed to pay [Plaintiff and putative class members] their correct wages and accordingly owe waiting time penalties . . . ." (*Id.* ¶ 18.) Plaintiff claims that Defendant failed to pay all wages due by requiring them to work during their meal and rest breaks. (*Id.* ¶ 8.) Plaintiff "demands thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the [class] period." (*Id.* ¶ 109.)

An employer is required to pay wages and a failure to pay all wages due upon termination or within 72 hours of resignation results in a penalty equal to the employee's daily wages, for up to 30 days of pay. *See* Cal. Lab. Code §§ 201, 202, 203. Waiting time penalties are derivative of other claims. *Hill*, 2025 WL 1898255, at *8 ("if any putative class member was not paid for all hours worked at any time during their employment, or if the employee experienced a rest break or meal period violation, and if Defendants failed to remedy those violations immediately upon the termination or

resignation of the employee, then the putative class member is entitled to receive up to 30 days' worth of pay.").

Defendant assumed a 100% violation rate and calculated an AIC of $1,011,790 (220 putative class members who separated from Defendant during the class period times 7 hour shift average times $21.90 average pay rate times 30 days). (Dkt. No. 21 at 18; *see also* Dkt. No. 21-3, Shipp Decl. ¶¶ 5(d), (f), (h).)

Here, because the waiting time penalties are also based on at least one missed meal and one missed rest break, and the Labor Code violations are ongoing, (Dkt. No. 11, FAC ¶ 4), "a 100% violation rate is not only reasonable—it is a necessary condition of Plaintiff's decision to file this putative class action case." *See Hill,* 2025 WL 1898255, at *8; *see also La Grow v. JetBlue Airways Corp*., No. 24-cv-00518, 2024 WL 3291589, at *5 (C.D. Cal. July 3, 2024) ("Courts in the Ninth Circuit have found both a 100% assumed violation rate and using the maximum 30-day recovery period for waiting time penalties to be reasonable."); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages."); *Nunes v. Home Depot U.S.A., Inc*., No. 2:19-CV-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (finding reasonable an assumption of the maximum waiting time penalty of 30 days of pay as it was reasonable to assume terminated class members suffered at least one violation and as such were not paid all wages owed upon termination and defendant did not remedy that violation within 30 days); *Cavada v. Inter-Cont'l Hotels Grp., Inc*., No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption."); *Gonzalez v. Barnard Construction Co.,* No. 22-cv-00534-AJB-

KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("Even if Defendants did use a 100% violation rate, other district courts have concluded that allegations of the willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate."). Therefore, Defendant has reasonably assumed a 100% violation rate with an AIC of $1,011,790.

In conclusion, based on the allegations in the FAC, the AIC amounts to $6,174,290 ($1,075,000 (meal break) + $1,075,000 (rest break) + $2,312,500 (unpaid wages and unpaid overtime compensation) + $700,000 (inaccurate wage statement) + $1,011,790 (waiting time penalties).[3] Therefore, Defendant has demonstrated that the amount-in-controversy could exceed $5,000,000, and the Court has jurisdiction over this case.

**Conclusion**

Based on the reasoning above, the Court DENIES Plaintiff's motion to remand the case to state court. The hearing set on October 30, 2026 shall be **vacated.**

IT IS SO ORDERED.

Dated: October 27, 2026

Hon. Gonzalo P. Curiel
United States District Judge

[3] The Court need not address Defendant's argument on the AIC concerning prospective injunctive relief and attorney's fees because the AIC has exceeded the jurisdictional threshold. (*See* Dkt. No. 21 at 18-20.)