UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE CAZARES RODRIGUEZ, an individual, on behalf of himself and on behalf of all persons similarly situated , Plaintiff, v. HV GLOBAL GROUP, INC., a corporation; and DOES 1 through 50, inclusive, Defendant. | Case No.: 26cv3395-GPC(JLB) **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING ACTION PENDING ARBITRATION** **[Dkt. No. 7.]** |

Before the Court is Defendant's motion to compel arbitration. (Dkt. No. 7.) Plaintiff filed an opposition and Defendant replied. (Dkt. Nos. 17, 20.) Based on the reasoning below, the Court GRANTS Defendant's motion to compel arbitration and STAYS the case pending arbitration.

**Background**

On June 4, 2026, the case was removed from state court. (Dkt. No. 1, Not. of Removal.) On July 1, 2026, Jorge Cazares Rodrigues ("Plaintiff") filed a first amended complaint ("FAC") alleging a putative wage and hour class action on behalf of himself and on behalf of all persons similarly situated. (Dkt. No. 11, FAC.) According to the

FAC, Plaintiff was employed by Defendant in California from July 2019 to June 2025 and was classified as a non-exempt employee and paid on an hourly basis. (Dkt. No. 11, FAC ¶ 3.) Defendant HV Global Group, Inc. provides real estate services in California. (*Id.* ¶ 2.)

On February 4, 2020 and on March 17, 2021, Plaintiff acknowledged an acceptance of the Arbitration Agreement ("Agreement") which includes a class action waiver. (Dkt. No. 7-3, Shipp Decl., Ex. B.) The Arbitration Agreement provides

> **Binding Arbitration**. Except as this Agreement otherwise provides, Team Member and Company both agree to exclusively and finally resolve, by binding arbitration, **any and all claims** that Company may have against Team Member or that Team Member may have against Company **relating to, resulting from, or in any way arising out of this Agreement, Team Member's relationship with Company, and/or the termination of Team Member's relationship with Company**. Team Member and Company agree this covers any and all claims or controversies that Employee may have against Employer . . . .

(Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 1 (emphasis in original).)

Section 2 of the Arbitration Agreement includes a delegation clause stating,

> **Arbitrator's Exclusive Authority**. This Agreement shall be construed and enforced in accordance with the FAA. Except as this Agreement otherwise provides in Section 3, below, the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute arising out of or relating to the validity, interpretation, scope, applicability, enforceability, breach or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

(Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 2.)

Defendant moves to compel arbitration of Plaintiff's individual claims under the Federal Arbitration Act[1] and any dispute regarding the validity, enforceability or breach

---

[1] Neither party disputes that the Federal Arbitration Act applies to this case.

and seeks to stay the action until arbitration is completed. (Dkt. No. 7.) Plaintiff filed an opposition and Defendant replied. (Dkt. Nos. 17, 20.)

**Discussion**

**A. Federal Arbitration Act**

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The United States Supreme Court has stated that there is a federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ*., 489 U.S. 468, 476 (1989). Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.* The FAA reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (citations omitted).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n Workers of Am*., 475 U.S. 643, 648 (1986); *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) ("it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration."). In interpreting an arbitration agreement, the courts must "apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). On a motion to compel arbitration, the court may consider evidence outside the

pleadings. *See S.G. v. Epic Games, Inc.,* 796 F. Supp. 3d 614, 618 (N.D. Cal. 2025) (citations omitted).

Under the FAA, the court's role is limited to deciding "two gateway arbitrability issues": "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). However, a delegation provision limits federal court review "by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). A delegation clause is a provision within an arbitration provision that delegates to the arbitrator threshold or gateway questions about arbitrability such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 65 (2019). There must be "'clea[r] and unmistakabl[e]' evidence that" "the parties agreed to arbitrate arbitrability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT&T Techs*., 475 U.S. at 649). A party seeking to have a court address a challenge to an delegation provision, rather than the arbitration agreement as a whole, must specifically dispute the delegation clause. *Rent-A-Center*, 561 U.S. at 70-72.

Relying on Supreme Court law, the Ninth Circuit has outlined the analysis that a court must take when faced with an arbitration agreement that includes a delegation clause:

> First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to

> the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark, LLC v. Chicksaw Nation,* 43 F.4th 1021, 1030 (9th Cir. 2022).

**B. Was there an Agreement to Arbitrate**

Under *Caremark*, the first question is whether there was an agreement to arbitrate. and is always a question for the Court and not the arbitrator. *See Caremark*, 43 F.4th at 1030 (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) (challenges to contract formation, not contract validity, is always reserved for the court)).

"[T]he party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp*., 14 Cal. 4th 394, 413 (1996)). "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565; *see* Cal. Civ. Code, §§ 1550, 1565. Mutual assent may be manifested through "written or spoken words, or by conduct," and acceptance can be implied through action or inaction. *Id.* (citation omitted). The mutual consent necessary to form a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (citation omitted). "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." *Id.* "[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains" but "when the offeree does not know that a proposal has been made to him this objective standard does not apply." *Windsor Mills, Inc. v. Collins & Aikman Corp*. 25

Cal. App. 3d 987, 992-93 (1972). "This principle of knowing consent applies with particular force to provisions for arbitration." *Id.* at 993.

Under Civil Code section 1633.7, a "record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7(a). On a motion to compel arbitration, a defendant may meet its "initial burden to show an agreement to arbitrate" "by attaching a copy of the arbitration agreement purportedly bearing the [plaintiff's] signature." *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). Once a plaintiff "challenge[s] the validity of that signature in [their] opposition", a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id.*

Here, Defendant met its initial burden and presents evidence of the Arbitration Agreement and Plaintiff's[2] electronic "acknowledgment" of the Arbitration Agreement on February 4, 2020 and March 17, 2021. (Dkt. No. 7-3, Shipp Decl. Ex. B.) In his opposition, Plaintiff challenges the authenticity of his electronic acknowledgment arguing Defendant does not explain whether it was Plaintiff who accessed the system, whether another employee could have acknowledged the documents using his account, what security measures existed to verify his identity, whether he was required to review the agreement before acknowledging it, whether he received a completed copy of the agreement after acknowledgement and whether he was informed that acknowledging the document constituted acceptance. (Dkt. No. 17 at 10.) Despite his argument, in his declaration, Plaintiff admits he received the Arbitration Agreement and does not dispute that he acknowledged the Arbitration Agreement in February 2020 and March 2021. (Dkt. No. 17-1, Rodriguez Decl. ¶¶ 3-5.) Therefore, because Plaintiff, by declaration, does not challenge the validity of his electronic signature acknowledging the Arbitration Agreement, Defendant, in reply, did not need to demonstrate the authenticity of

---

[2] Defendant provides evidence that Plaintiff's preferred name is "Cody." (Dkt. No. 7-3, Shipp Decl. ¶ 5; Dkt. No. 7-3, Shipp Decl., Ex. A.)

Plaintiff's electronic signature. *See Espejo*, 246 Cal. App. 4th at 1060. The Court concludes that Plaintiff voluntarily assented to the Arbitration Agreement and there was an agreement to arbitrate between him and Defendant. *See e.g., Caremark*, 43 F.4th at 1030-31 (rejecting contract formation arguments where the party resisting arbitration did "not disavow the contracts entirely" or dispute certain "contractual relationships").

Plaintiff also argues there was no assent to the Agreement because he did not have a meaningful opportunity to negotiate or modify any terms, did not have represented counsel and believed he was required to acknowledge the documents in order to continue working with Defendant. (Dkt. No. 17-1, Rodriguez Decl. ¶¶ 3-5.) In support, he provides no legal authority these issues concern whether the parties formed an agreement to arbitrate; rather, these questions go to the issue of whether the arbitration agreement is valid or enforceable. *See Connell v. ByteDance, Inc*., Case No. 24-cv-07859-NC, 2025 WL 1828472, at *5 (N.D. Cal. July 1, 2025) ("Plaintiffs argue that the arbitration agreements lack mutuality and are illusory, thus rendering the agreements "unenforceable," rather than nonexistent . . . .")

**C. Delegation Clause**

Next, the "court must also resolve any challenge directed specifically to the enforceability of the delegation clause . . . ." *See Caremark*, 43 F.4th at 1029-30. Here, Plaintiff contests the validity of the delegation agreement on unconscionability grounds, (Dkt. No. 17 at 10-12), which permits the Court to address whether the delegation provision is valid and enforceable. *See Caremark,* 43 F.4th at 1029; *Bielski*, 87 F.4th at 1010. Plaintiff "may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." *Bielski*, 87 F.4th at 1011. Further, "[i]n evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret that provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Id.* at 1012.

Under the FAA, a court may declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and may invalidate an arbitration agreement by "generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *Concepcion*, 563 U.S. at 339 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114 (2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

The procedural component focuses on oppression, and surprise due to unequal bargaining power. *Armendariz*, 24 Cal. 4th at 114. The substantive element focuses on "overly harsh" or "one-sided" results. *Id.* This element "has to do with the effects of the contractual terms and whether they are unreasonable." *Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc*., 89 Cal. App. 4th 1042, 1053 (2001). Both procedural and substantive unconscionability must be present "in order for the court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519, 1533 (1997). The party opposing arbitration bears the burden to demonstrate unconscionability. *Bielski,* 87 F.4th at 1013.

**1. Procedural Unconscionability**

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (citing *Armendariz*, 24 Cal. 4th at 114). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position."

*Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) (citations and quotations omitted); *see also Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 174 (2002) ("procedural unconscionability focuses on the oppressiveness of the stronger party's conduct").

The Court first addresses whether the contract was one of adhesion. *Armendariz*, 24 Cal. 4th at 114. A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113. Under California law, a contract of adhesion has an element of procedural unconscionability because it is "presented on a take it or leave it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006).

Plaintiff argues that the delegation provision is procedurally unconscionable because it was presented as part of a mandatory contract of adhesion where Defendant drafted every provision and he could not negotiate any term or revise any provision, he was required to acknowledge the Agreement after he had already worked with Defendant for several months and became financially dependent on his employment, he was not given a meaningful opportunity to consult with an attorney, he was not required to sign or initial the delegation provision and the delegation clause was within the middle of a four page, single spaced agreement containing unfamiliar legal terms. (Dkt. No. 17 at 11.) Defendant argues that contracts of adhesion are not per se unconscionable, and in fact, the Agreement had an opt-out provision. (Dkt. No. 20 at 11-12.)

Here, the Agreement included an opt-out provision providing,

> **Election To Opt-Out**. Team Member acknowledges and understands that Team Member may elect to opt-out of this Agreement by submitting a signed opt-out form to Company at arb.optout@welkgroup.com within thirty (30) days of receiving this Agreement. Team Member may obtain an opt-out form through Human Resources, the Legal Department, or by emailing arb.optout@welkgroup.com. Team Member will not be subject to any adverse employment action as a consequence of a decision to opt out.

> Should Team Member not optout within 30 days of receiving this Agreement, Team Member's continued employment constitutes mutual acceptance by Team Member and the Company of the terms of this Agreement.

(Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 15.) The opt-out provision is not difficult to implement as an employee may simply email Defendant at the email listed in the opt-out clause.

An arbitration clause that permits an employee to opt-out of the Agreement within thirty (30) days of receiving the Agreement by obtaining the opt-out form from the appropriate department or emailing to the email provided is not a contract of adhesion. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (arbitration agreement not procedurally unconscionable where the clause allowed the party to reject arbitration within 60 days of signing); *see Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (arbitration agreement was not one of adhesion because he was provided the opportunity to opt-out within 30 days). Because the Agreement has an opt-out provision, it was not a "take it or leave it" situation that courts have held unconscionable. *See Bielski*, 87 F.4th at 1010 ("We have little trouble finding the delegation provision was presented as an adhesion contract because Mr. Bielski had only two options: accept the delegation provision or forgo a Coinbase account.").

Further, as to surprise, where the contract provisions are clearly spelled out and the delegation clause is not buried in fine print but instead has its own section, clearly labeled, in boldface, it is not unconscionable. *Cf., A & M Produce Co. v. FMC Corp*., 135 Cal. App. 3d 473 (1982) (finding procedural unconscionability of consequential damage provision contained in middle of last page of an agreement in inconspicuous font). Here, even though the Agreement is single-spaced, the font size is readable, each section is separated by paragraph number and spacing for easy reading, the heading of each section is bolded and underlined and key provisions are bolded making the

Agreement easy to read. The delegation provision contained in the section, **<u>Arbitrator's Exclusive Authority</u>** is clearly identifiable.

Further, Plaintiff contends that Defendant did not advise him or provide a meaningful opportunity to consult an attorney, and he felt he would lose his job if he did not acknowledge the Agreement as he had become financially dependent on his employment. (Dkt. No. 17 at 11, 13-14.)

Plaintiff agreed to the Acknowledgement that states that he carefully read and understood and agreed to the terms and knowingly and voluntarily entered in the Agreement and that he was given the opportunity to discuss the Agreement and opt-out procedure with an attorney.[3] The Agreement also states that employees will not be subject to any "adverse employment action" as a result of opting out of the Agreement. (*Id.* ¶ 15.) As such, Plaintiff's arguments that he was not provided with any opportunity to consult with an attorney and would suffer adverse employment actions is not supported by the terms of the Agreement. *See Ahmed*, 283 F.3d at 1200 (rejecting employee's argument that he "was not given a meaningful opportunity to opt out of the arbitration program because he did not have the degree of sophistication necessary to recognize the meaning of the opt-out provision or to know how to avoid it, and because 30 days was too short a period in which to make a decision because 'an employee is thinking positively about the employment relationship in the first 30 days[]'" because he provided no caselaw and a contracting party is "bound by the terms of a contract and cannot complain of unfamiliarity with the language of the instrument.").

---

[3] "**<u>Acknowledgment</u>. By signing this Agreement through the electronic means agreed to in UltiPro, or by inserting a signature on the bottom of the Agreement and returning it to your supervisor or Human Resources, Team Member acknowledges that Team Member has carefully read this Agreement, understands and agrees to its terms, and has knowingly and voluntarily entered into this Agreement without reliance on any provisions or representations by Company other than those contained in this Agreement.** Team Member further acknowledges that he or she has been given the opportunity to discuss this Agreement and the opt-out procedure with Team Member's legal counsel and that he or she has utilized that opportunity to the extent desired." (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 16.)

Here, the Court concludes there was a small degree of procedural unconscionability given it was drafted by Plaintiff's employer, a party with superior bargaining power and on a form contract. *See Gentry v. Superior Ct.,* 42 Cal. 4th 443, 469-70 (2007) (absence of procedural unconscionability apply to "contracts that have been freely negotiated by roughly equal parties" and arbitration agreement had a degree of procedural unconscionability even though there was a 30-day opt-out provision). Because procedural unconscionability is low, Plaintiffs must demonstrate a high degree of substantive unconscionability to render the delegation provision unconscionable. *See Dotson v. Amgen, Inc*., 181 Cal. App. 4th 975, 982 (2010).

**2. Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower*, 55 Cal. 4th at 246 (citations omitted).

Plaintiff argues the delegation provision is substantively unconscionable due to "(1) an overbroad scope requiring arbitration of claims unrelated to employment; (2) a lack of mutuality; (3) one-sided benefits for Defendant's affiliates and third-party beneficiaries; (4) an indefinite duration; (5) an overbroad jury-trial waiver; and (6) inadequate protections regarding discovery." (Dkt. No. 17 at 12.)

**a. Overbroad in Scope and Indefinite Duration**

Plaintiff asserts that the Agreement requires Plaintiff to arbitrate "any and all claims or controversies" extending to every dispute Plaintiff may have against Defendant including claims that have no meaningful relationship to the employment relationship and claims that arise long after his employment ends. (Dkt. No. 17 at 17, 19.) Defendant responds that the Agreement is limited to claims related to Plaintiff's employment with Defendant and does not include "every possible claim" Plaintiff could ever bring against Defendant. (Dkt. No. 20 at 14.) Defendant also argues that the Agreement does not extend indefinitely to any potential claims unrelated to his employment with Defendant and only endures past Plaintiff's employment termination as it relates to his employment

with Defendant and the statute of limitations will eventually extinguish these claims. (*Id.*)

The Arbitration Agreement provides,

> Team Member and Company both agree to exclusively and finally resolve, by binding arbitration, **any and all claims** that Company may have against Team Member or that Team Member may have against Company **relating to, resulting from, or in any way arising out of this Agreement, Team Member's relationship with Company, and/or the termination of Team Member's relationship with Company**.

(Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 1 (emphasis in original).)

Plaintiff relies solely on "**any and all claims**" but fails to consider that "**any and all claims**" are "**relating to, resulting from, or in any way arising out of this Agreement, Team Member's relationship with Company, and/or the termination of Team Member's relationship with Company.**" The plain language of paragraph 1 of the Agreement does not support Plaintiff's position as it is limited to any claims related to his employment with Defendant and does not extend to unrelated claims.

In support, Plaintiff relies on the case of *Cook* where the court of appeals held the broad scope of the arbitration agreement, in that case, which applied to all claims "whether or not arising out of Employee's University employment" was unconscionable. *Cook v. Univ. of S. Cal.* 102 Cal. App. 5th 312, 325 (2024). Here, the Arbitration Agreement is limited to issues related to Plaintiff's employment and termination and is not overbroad in scope.

The Agreement also provides that "[t]his Agreement to arbitrate shall survive the termination of Team Member's employment." (Dkt. No. 7-3, Shipp Decl., Ex. B, Arb. Ag. 14.) The Ninth Circuit recently held that an arbitration agreement limited to employment related claims that survives the termination of an employee's employment does not render the agreement indefinite and is not substantively unconscionable. *See Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1178 (9th Cir. 2026). The court stated that the fact that the Arbitration Agreement is "limited to employment-related disputes

imposes an inherent limitation on the agreement's duration." *Id.* It explained that such an arbitration agreement is not unconscionable due to the limited scope of the arbitration agreement where the employment-related claims will stop accruing when the employment relationship ends and then the applicable statute of limitations will apply to limit the period in which covered claims could be brought. *Id.* The court distinguished the ruling in *Cook* because there, the court read the agreement as applying to all claims, even those unrelated to employment so it was logical for the court to assume that covered claims might arise many years after Cook's employment ended. *Id.* Thus, Plaintiff's arguments that the Agreement is overbroad in scope and of indefinite duration are not supported by the terms of the Agreement and caselaw.

**b. Lack of Mutuality-Agreement is One-Sided**

Plaintiff maintains that the Agreement lacks mutually because the claims subject to arbitration are almost entirely claims brought by employees against employers while Defendant only identifies a few claims it could likely bring against an employee. (Dkt. No. 17 at 17-18.) Defendant disagrees stating that Plaintiff ignores the language of the Agreement where the obligations imposed by the Agreement applies equally to both parties and the illustrative list of covered claims do not create a lack of mutuality. (Dkt. No. 201 at 14-15.)

Here, the Arbitration Agreement provides, that "Team Member and Company both agree to exclusively and finally resolve, by binding arbitration, **any and all claims** that Company may have against Team Member or that Team Member may have against Company . . . ." (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 1 (emphasis in original).) A number of non-exclusive claims or causes of actions are subsequently identified.[4]

---

[4]" Except as it otherwise provides, this Agreement also applies, without limitation, to disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy, the employment relationship or the termination of that relationship, **contracts**, **trade secrets**, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, retaliation, claims for violation of any leaves of absence or accommodation laws, claims for benefits (except where an employee benefit or pension plan specifies

Plaintiff relies on *Navas v. Fresh Venture Foods*, LLC, 85 Cal. App. 5th 626, 636 (2022) where the arbitration agreement applied to "all legal claims between [employer] and [employee]," and listed nine "covered claims" that concerned only the types of claims an employee brings against an employer. *Id.* Because the listed claims were "the type of claims that only employees bring against employers," the court of appeal concluded the agreement was one-sided and not mutual. *Id.* at 637.

In response, Defendant relies on *Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1248 (2016). In contrast to *Navas,* in *Baltazar*, the California Supreme rejected Plaintiff's argument the arbitration agreement was substantively unconscionable because it listed "only employee claims as examples of the types of claims that are subject to arbitration." *Baltazar*, 62 Cal. 4th at 1248. The California Supreme Court explained,

> The arbitration agreement at issue here makes clear that the parties mutually agree to arbitrate all employment-related claims: that is, "any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee." That provision clearly covers claims an employer might bring as well as those an employee might bring. The illustrative list of claims subject to the agreement is just that; the agreement specifically states that such claims "include but are not limited to" the enumerated claims, thus making clear that the list is not intended to be exhaustive. It thus casts no doubt on the comprehensive reach of the arbitration agreement. It is not particularly remarkable that the agreement's

---

that its claims procedure shall culminate in an arbitration procedure different from this one), discrimination or harassment and claims arising under the Fair Credit Reporting Act, Defend Trade Secrets Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, Rehabilitation Act, Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, the Pregnancy Discrimination Act, Equal Pay Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local statutory and legal claims arising out of or relating to your employment or the termination of employment (including without limitation torts and post-employment defamation or retaliation). (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 1 (emphasis added).)

> list of examples might highlight certain types of claims that employees often bring, since part of the purpose of the agreement is to put employees such as Baltazar on notice regarding the scope of the agreement, thus eliminating any possible surprise. The examples do not alter the substantive scope of the agreement, nor do they render the agreement sufficiently unfair as to make its enforcement unconscionable.

*Id.* at 1249. Not only is *Navas* factually distinguishable because the arbitration agreement in this case includes causes of action brought by an employer such as contracts and trade secrets but it is also contrary to *Baltazar*, a controlling precedent. *See Prostek v. Lincare Inc*., 662 F.Supp.3d 1100, 1120 (E.D. Cal. 2023) (*Baltazar,* not *Navas*, controls."). Therefore, Plaintiff has failed to demonstrate that the Agreement lacks mutuality.

**c. Lack of Mutuality - Third Party Beneficiary**

Plaintiff, again relying on *Cook,* argues that the Arbitration Agreement requires him to arbitrate claims against Defendant as well as an extensive list of unnamed third parties, including but not limited to affiliates, parent companies, subsidiaries, officers, directors, employees, and insurers but asserts Plaintiff has no corresponding benefit. (Dkt. No. 17 at 18.) Defendant maintains that the Agreement names third parties that may invoke arbitration with respect to issues arising from Plaintiff's employment with Defendant and does not expand covered claims beyond that. (Dkt. No. 20 at 15.)

Arbitration agreements "must contain at least 'a modicum of bilaterality' to avoid unconscionability. When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality." *Ayala-Ventura v. Superior Ct*., 119 Cal. App. 5th 241, 258 (2006) (citation and quotation marks omitted).

In *Cook,* the agreement required Cook to arbitrate any and all claims she may have against USC "or any of its related entities including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise" yet, it did not require USC's related entities to arbitrate

their claims against Cook. *Cook*, 102 Cal. App. 5th at 326. Due to the broad nature of the scope of arbitration, the court found that the provision was one-sided because Cook was required to give up her "ability to ever bring claims in court against a USC employee that are unrelated to USC or her employment there." *Id.* at 327.

Courts have distinguished *Cook* because there, the court's ruling was grounded on its conclusion that the agreement was overbroad and applied to all claims whether they were related to Cook's employment or not. *See Ayala-Ventura*, 119 Cal. App. 5th at 258 (Language including third parties "was understood as requiring Cook to arbitrate any claims against these individuals even where they were not acting in their identified capacity."); *Cocom*, 179 F.4th at 1178 (noting that *Cook*'s mutuality ruling "was predicated on the court's conclusion that the agreement applied to all claims, regardless of whether they were related to Cook's employment.")

In *Ayala-Ventura*, the court of appeal held that the agreement's definition of "Company" expressly included related entities and binds those entities to arbitration and was not unconscionable because any claims Ayala-Ventura may have against employees or agents unrelated to their role were not subject to the Agreement. *Ayala-Ventura*, 119 Cal. App. 5th at 258. In *Cocom,* the Ninth Circuit held that the inclusion of third parties did not render the agreement unconscionable because the Agreement was limited to employment-related claims and any claims Cocom may have against third parties "unrelated to their role" in Defendant would not be covered by the arbitration agreement. *Cocom*, 179 F.4th at 1178.

Here, the Agreement defines Company to include Employer, "or its officers, directors, partners, employees, representatives, agents, pension or benefit plans, administrators, fiduciaries, or any parent, subsidiary, predecessor, or affiliated company or corporation." (Dkt. No. 7-3, Shipp Decl., Ex. C at Preamble.) It then provides that

> Team Member and Company both agree to exclusively and finally resolve, by binding arbitration, any and all claims that Company may have against Team Member or that Team Member may have against Company relating to, resulting from, or in any way arising out of this Agreement, Team Member's

> relationship with Company, and/or the termination of Team Member's relationship with Company. Team Member and Company agree this covers any and all claims or controversies that Employee may have against Employer or against its past, present, or future predecessors, successors, assigns, affiliates, parent and subsidiary companies, joint ventures, pension or benefit plans, administrators, vendors, contractors, and their respective past, present, or future officers, directors, employees, stockholders, representatives, managers, members, partners, partnerships, agents, clients, suppliers, vendors, business advisors, financial advisors, attorneys, and accountants, insurers, and indemnitees.

Similarly, here, because the Agreement is limited to Plaintiff's employment with Defendant, any lack of mutuality due to the inclusion of third party beneficiaries "does not rise to the level of substantive unconscionability." *See Cocom*, 179 F.4th at 1178.

**d. Overbroad Jury Trial Waiver**

Plaintiff, without specifically identifying a provision in the Agreement, objects to the pre-dispute jury trial waiver contending it is unenforceable because it does not limit the claims that may be lawfully compelled to arbitration. (Dkt. No. 17 at 19.) Defendant disagrees. (Dkt. No. 20 at 16.)

Plaintiff does not identify the language of the pre-dispute jury trial waiver. Based on the Court's review, Plaintiff may be referencing the provision stating that the "[t]he arbitration will be governed by the JAMS Employment Arbitration Rules and Procedures ("JAMS Rules") then in effect, and not by court or jury trial." (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 5.1.) However, this section is not a pre-dispute jury trial waiver as it is a jury trial waiver inherent in an arbitration agreement.

"Under California law, pre-dispute jury trial waivers are invalid unless expressly authorized by statute." *In re Cnty. of Orange*, 784 F.3d 520, 523 (9th Cir. 2015) (citing *Grafton Partners, L.P. v. Superior Ct*., 36 Cal. 4th 944 (2005)). A pre-dispute jury trial wavier "require[s] plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law." *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 107 (2020); *see also Lange v. Monster Energy Co*., 46 Cal. App. 5th

436, 452 (2020) (finding that pre-dispute jury trial waiver "in the event that any controversy or claim is determined in a court of law" was substantively unconscionable but finding that jury trial waiver inherent in arbitration agreement was not); *Durruthy v. Charter Commc'ns, LLC*, No. 20-cv-1374-W(MSB), 2020 WL 6871048, at *12 (S.D. Cal. Nov. 23, 2020) (finding unconscionable pre-dispute jury waiver stating "in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist."). Here, Plaintiff has not identified a pre-dispute jury trial waiver in the Agreement and failed to sustain his burden demonstrating unconscionability on this issue.

**e. Inadequate Protections Against Discovery**

Plaintiff next argues he has inadequate protections regarding discovery because even though the parties may conduct discovery, the Agreement grants the arbitrator discretion over discovery. (Dkt. No. 17 at 12, 19-20.) Defendant objects arguing that the Agreement expressly grants the parties to conduct civil discovery. (Dkt. No. 20 at 16-17.)

The Agreement provides that "[t]he parties shall be entitled to engage in civil discovery (e.g., depositions, interrogatories, request for production of documents, requests for admission, etc.) regarding and relevant to the subject matter of the dispute submitted to arbitration and in accordance with the JAMS Rules. . . . Either party may request additional discovery from the arbitrator. Disputes regarding discovery shall be resolved by the arbitrator." (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 5.4.) The JAMS Rules and Procedures permit broad discovery. (Dkt. No. 7-3, Shipp Decl., Ex. D, JAMS Rule 17.) Plaintiff misinterprets the Agreement. In this case, the Agreement not only mandates the right to discovery, and includes depositions, interrogatories, request for production of documents, and requests for admission, but also permits additional discovery at the arbitrator's discretion.

The California Supreme Court has held that limitations on discovery in arbitration are appropriate, as long as parties can "access [ ] essential documents and witnesses, as

determined by the arbitrator." *Armendariz*, 24 Cal. 4th at 106. As long as the arbitration provides "for more than minimal discovery," it is not unconscionable. *Id*. at 102 (citation omitted) 24 Cal. 4th at 102; *Dougherty*, 47 Cal. App. 5th at 106 (arbitration agreement substantively unconscionable due to inadequate discovery which unfairly favored defendants and the AAA rules only permitted depositions in "exceptional cases" and at the discretion of the arbitrator upon a showing of good cause and provided for no interrogatories or request for admissions).

Plaintiff's reliance on *Beco* is not supportive as in that case, the arbitration agreement stated "[t]he arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including but not limited to[,] production of documents, information requests, depositions, and subpoenas." *Beco v. Fast Auto Loans, Inc*., 86 Cal. App. 5th 292, 300 (2022). The court held that [g]iving the arbitrator unfettered discretion over how much discovery does or does not take place is inconsistent with allowing more than minimal discovery, which is required for FEHA claims." *Id.* at 312. Here, contrary to the discovery provision in *Beco,* the arbitrator is not given unfettered discretion over discovery and the Agreement ensures the parties are entitled to engage in full discovery and in accordance with JAMS rules. Accordingly, Plaintiff's argument that the Agreement provides inadequate discovery protections is not supported by the terms of the Agreement and caselaw.

Lastly, Plaintiff summarily argues that the delegation language, itself, is confusing because it includes an exception and does not clearly explain what issues remain for the Court and what issues are delegated for the arbitrator. (Dkt. No. 17 at 12.) Here, the delegation clause states that "Except as this Agreement otherwise provides in Section 3, below, the Arbitrator . . .shall have the exclusive authority to resolve any dispute arising out of or relating to the validity, interpretation, scope, applicability, enforceability, breach or formation of this Agreement . . . ." (Dkt. No. 7-3, Shipp Decl., Arb. Ag. ¶ 2.) Section 3 is the Waiver of Class and Collective Action Proceedings. (*Id.* ¶ 3.)

On its face, the delegation clause is not confusing or ambiguous as it merely carves out an exception from the Arbitrator's grant of exclusive authority to resolve disputes. The delegation is clearly distinguishable from *Murrey v. Superior Ct.,* 87 Cal. App. 5th 1223, 1243-44 (2023) which held the arbitration agreement was procedurally unconscionable because of confusion about applicable arbitration rules, where agreement incorporated employer's own set of arbitration rules as well as the rules of the dispute resolution provider and at the same time authorized the arbitrators to expand or limit employer's set of rule. It is also unlike *Davis v. TWC Dealer Grp. Inc*., 41 Cal. App. 5th 662, 675 (2019) which held that arbitration agreement was substantively unconscionable due to the existence of three separate agreements to arbitrate and each had confusing terms as well as inconsistencies. Thus, the delegation clause is not substantively unconscionable due to confusion or ambiguity.

In conclusion, the Court concludes that the delegation clause is not unconscionable. Because the Court concludes that the parties validly delegated gateway questions to the arbitrator, the Court GRANTS Defendant's motion to compel arbitration. *See e.g., Caremark, LLC*, 43 F.4th at 1030 ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

**D. Class and Collective Action Waiver**

Defendant also seeks to dismiss or strike the class action and collective action claims pursuant to the Class Action Waiver[5] in the Agreement. (Dkt. No. 7-1 at 11-12.) Plaintiff simply argues that because the Agreement is unenforceable, the Class Action Waiver is also unenforceable and there is no basis to dismiss the class allegations. (Dkt. No. 17 at 22.)

---

[5] Class Action Waiver means class or collective action. (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 3.)

As noted in the prior section, section 3 of the Agreement contains a waiver of the right to bring or participate in a class action or collective action. (Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 3.) Section 3 also states that "disputes in court or arbitration regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a court and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction, **but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration**." (*Id.* (emphasis added).) It is to be remembered that the delegation clause expressly excludes Section 3 from the arbitrator's exclusive authority. (*Id.* ¶ 2.)

Under Supreme Court and Ninth Circuit precedent, class and collective action waivers must be enforced. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524-25 (2018) ("Congress has instructed that arbitration agreements like those before us must be enforced as written."); *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1013 (9th Cir. 2023) (*Epic Systems*, overruled Ninth Circuit precedent and held "that arbitration agreements that require individual arbitration, rather than class or collective actions, are enforceable under the Federal Arbitration Act"); *O'Connor v. Uber Techs*., Inc., 904 F.3d 1087, 1094 (9th Cir. 2018) (explaining that *Epic Systems* foreclosed the argument that "arbitration agreements are unenforceable because they contain class action waivers that violate the National Labor Relations Act of 1935"). Plaintiff has not substantively challenged Class Action Waiver.

The Court must enforce the parties' agreement. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) ("In accordance with Supreme Court precedent, we are required to enforce these agreements 'according to their terms' and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability as to all but the claims

specifically exempted by the 2013 Agreement."). Here, the delegation clause delegates threshold questions of arbitrability to the arbitrator with the exception of the Class Action Waiver. The Class Action Waiver mandates that the Court determine the enforceability of the Class Action Waiver, and once determined to be enforceable, enforcement is left to the arbitrator. (*See* Dkt. No. 7-3, Shipp Decl., Ex. C, Arb. Ag. ¶ 3.) Based on the parties' agreement, the Court finds it inappropriate to dismiss the class and collective action claims because enforcement of the Class Action Waiver is for the arbitrator to decide. Therefore, the Court DENIES Defendant's motion to dismiss or strike the class action claims from the FAC. *See e.g., Castellanos v. Travelers Indem. Co*., Case No. 2:25-cv-06310-MCS-AS, 2025 WL 4649194, at *5 (C.D. Cal. Oct. 21, 2025) (declining to dismiss the class claims and stayed case because the parties agreed "if a party brings an action that includes both claims subject to arbitration under this agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims subject to arbitration are fully arbitrated.").

**E. Stay Action**

Lastly, Defendant requests that the Court stay this action pending arbitration of Plaintiffs' claims.[6] (Dkt. No. 7-1 at 17.) "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024); *see* 9 U.S.C. § 3. Because a delegation clause is "merely a specialized type of arbitration agreement, and the [FAA] 'operates on this additional arbitration agreement just as it does on any other'", the Court may invoke the provision of § 3 to stay an action

---

[6] The Court notes the Defendant seeks to stay the action under California law, and not the FAA. (Dkt. No. 7-1 at 17 (citing Cal. Civ. Proc. Code § 1281.4 ("If an application has been made . . . for an order to arbitrate a controversy . . . the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined . . . ."). This rule is consistent with § 3 of the FAA.

pending arbitration. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019). Because the delegation clause is enforceable, the Court finds that a stay is appropriate. *See id.*

**Conclusion**

Based on the reasoning above, the Court GRANTS Defendant's motion to compel arbitration, DENIES dismissal of the class and collective action claims, and STAYS the action pending arbitration. The parties must provide joint status reports regarding the status of the arbitration every sixty (60) days.

Because the Court GRANTS Defendant's motion to compel arbitration, the Court DENIES Defendant's motion to dismiss as MOOT. (Dkt. No. 15.) The hearing set on October 30, 2026 shall be **vacated.**

IT IS SO ORDERED.

Dated: October 29, 2026

Hon. Gonzalo P. Curiel
United States District Judge